KATHERINE COULSON et al., Appellants, v. BERNARD G. FLYNN,
    Respondent, Interpleaded by the SUPREME COUNCIL OF THE
    CATHOLIC MUTUAL BENEFIT ASSOCIATION.

1. MUTUAL BENEFIT ASSOCIATION — ULTRA VIRES WAIVER OF RULE
AS TO BENEFICIARIES.    A certificate issued by a mutual benefit associa-
tion designating as the beneficiary one who was neither a relative of nor a
dependent upon the insured, with "whom he lives and upon whom he
depends, or such other persons as the rules and regulations of said asso-
ciation shall determine," entitles the beneficiary named, upon the death
of the insured, to the sum designated therein, notwithstanding the provi-
sions of a by-law of the association restricting the designation of bene-
ficiaries to relatives and dependents only, where it appears that the act
under which it was incorporated (L. 1879, ch. 496, § 7) authorized others
to be named as beneficiaries, and that the association, with knowledge that
the beneficiary designated was not within the class embraced in the
by-law, accepted the member and thereafter received his dues and assess-

ments, and, therefore, must be deemed to have waived any defense of *ultra vires* founded upon such by-law.

2. OBJECTION OF ULTRA VIRES AVAILABLE TO ASSOCIATION ONLY. Assuming, however, that the issuing of such certificate was *ultra vires*, the question can be raised by the association only, and, therefore, in an action against it brought by the brother and sisters of decedent to recover the amount named therein, in which the beneficiary named was interpleaded, the association paying the money into court and not defending, the plaintiffs cannot raise it, inasmuch as they have no certificate at all, and have no contract basis for any claim whatever.

*Coulson* v. *Flynn*, 90 App. Div. 613, affirmed.

(Argued February 2, 1905; decided February 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 16, 1904, affirming a judgment in favor of defendant entered upon a decision of the court on trial at an Equity Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Kennedy* for appellants. The act of incorporation of the Catholic Mutual Benefit Association does not authorize the members thereof to name beneficiaries who are not relatives or dependents. (*Sanger* v. *Rothschild*, 50 Hun, 157; 123 N. Y. 577; *Simon* v. *O'Brien*, 87 Hun, 165; *McCord* v. *McCord*, 40 App. Div. 275; *Di Messiah* v. *Gern*, 10 Misc. Rep. 30; *Sargent* v. *Knights of Honor*, 158 Mass. 557; *Tyler* v. *O. F. M. R. Assn.*, 14 Mass. 134; *Coudell* v. *Woodward*, 29 S. W. Rep. 614; *Hanna* v. *Hanna*, 30 S. W. Rep. 820; *Alexander* v. *Parker*, 144 Ill. 355; *N. O. P. H. Society* v. *Wilson*, 52 N. E. Rep. 41.) The question here is not whether the association alone can raise the objection that the beneficiary is not of the class designated by the constitution of the association, but whether the constitution of the association is to govern the rights of these claimants. (*Palmer* v. *Welch*, 13 Ill. 14; *B. M. L. B. Assn.* v. *Blue*, 112 Ill. 331; *N. O. P. H. Society* v. *Wilson*, 52 N. E. Rep. 41; *Sanger* v. *Rothschild*, 123 N. Y. 577; *Lahey* v.

*Lahey*, 174 N. Y. 146.) The insured Bartholomew Savage had no power over the beneficiary fund except the power to appoint a beneficiary within section 15 of the beneficiary fund law, and if he failed to do that the money was to be distributed under the distribution clause of said section. (*Hellenberg* v. *District No.* 1 *of I. O. of B. B.*, 94 N. Y. 580.) The learned trial court erred in holding that because the association could not avoid payment of the certificate by maintaining a defense to the claim of the defendant as the designated beneficiary, that therefore, the plaintiffs cannot recover this money under the contract with the insured. (*Story* v. *W. M. M. B. Assn.*, 95 N. Y. 474.)

*William F. Wierling* and *John J. Sullivan* for respondent. Under the act incorporating the C. M. B. A. the members thereof are authorized to name beneficiaries who are not relatives or members of their families or dependents. (L. 1879, ch. 496, § 7; *Massey* v. *M. R. Society*, 34 Hun, 254; 102 N. Y. 523; *Sabin* v. *Phinney*, 134 N. Y. 423; *Levin* v. *Ritz*, 17 Misc. Rep. 737; *Brown* v. *Brown*, 6 Misc. Rep. 433.) If the beneficiary named by the deceased was not of the class designated by the rules and by-laws the association alone can raise the objection. (*Maguire* v. *Maguire*, 59 App. Div. 143; *Markey* v. *Supreme Council*, 70 App. Div. 4; *Luhrs* v. *Supreme Lodge*, 27 N. Y. S. R. 88; *Knights of Honor* v. *Watson*, 64 N. H. 517; *Johnson* v. *Knights of Honor*, 53 Ark. 255; *Story* v. *W. M. M. B. Assn.*, 95 N. Y. 474; *Massey* v. *M. R. Society*, 102 N. Y. 523.) By accepting the application of deceased, with full knowledge of the alleged imperfect designation, and by issuing its certificate in conformity therewith, and by paying the benefit into court, the association itself effectually waived any and all defects. (*Davidson* v. *O. P. M. B. Society*, 39 Minn. 303; *Benefit Assn.* v. *Blue*, 120 Ill. 121; *Smith* v. *P. M. B. Society*, 64 Hun, 534; *Kimball* v. *Lester*, 43 App. Div. 27; *Tramblay* v. *Supreme Council*, 90 App. Div. 39; *Lindsey* v. *W. M. A. Society*, 84 Iowa, 734.)

BARTLETT, J.   The plaintiffs are the surviving sisters and brother of Bartholomew Savage, deceased, who brought an action on April 8th, 1903, to recover the sum of two thousand dollars upon a benefit certificate issued to him by the defendant association.   On the 13th day of April, 1903, the defendant Flynn, as the beneficiary named in the certificate, commenced a similar action against the defendant association.

By an order of the court made April 16th, 1903, upon the application of the defendant association, it was permitted to pay the amount of the benefit certificate into court and the action brought by defendant Flynn against the association was thereupon discontinued and he was interpleaded as a defendant in this action.   The case was tried at Special Term and resulted in a judgment in favor of the defendant Flynn, which was unanimously affirmed by the Appellate Division.

There are two principal questions presented by this appeal. The first one, whether the plaintiffs have any standing in court enabling them to sue upon this benefit certificate, and the other, whether the complaint, assuming the plaintiffs have the right to litigate, sets up a cause of action.

In considering these questions a few facts must be stated. The defendant association was incorporated under the Laws of 1879, chapter 496.   Section seven thereof provides, among other things, as follows: "Such beneficiary fund as may be ordained suitable by said corporation may be set apart and provided to be paid over to the families, heirs, or representatives of deceased members, or to such person or persons as such deceased members may, while living, have directed." Section three provides that the corporation shall have power to make, from time to time, such constitution, by-laws, rules and regulations as they shall judge proper for the due conduct of its business.

The certificate of insurance issued to Bartholomew Savage, deceased, contains this language: "Which sum shall, at his death, be paid to Barney Flynn with whom he lives and upon whom he depends, or such other person as the rules and regulations of said association shall determine."

The contention of the plaintiffs is that while the language of the certificate constituting Barney Flynn the beneficiary is in conformity with the act of incorporation, yet the same is void for the reason that section fifteen of the Beneficiary Fund Law, enacted in pursuance of the provisions of the said act, has changed the rule as to the power of the insured to name beneficiaries. That section provides that the insured may make the certificate payable " to his wife, his children or any child by legal adoption, his father, mother, his brothers or sisters, blood relations or persons dependent upon him for maintenance, sustenance and support."

It is by reason of these facts that the brother and sisters of the deceased insist that the amount due from the defendant association on the benefit certificate should be paid to them rather than to the defendant Flynn.

It is to be kept in mind that this action, as tried, was between the brother and sisters of the insured and Flynn, the beneficiary named in the certificate ; that the defendant association is not defending and holds itself ready to pay such person as the court may determine is the legal beneficiary.

It has been frequently held in the lower courts that if the defendant association's act in issuing the certificate was *ultra vires*, persons in the position of these plaintiffs cannot take advantage of it, inasmuch as they come into court having no certificate at all and without a contract basis for any claim whatever. (*Markey* v. *Supreme Council C. B. L.*, 70 App. Div. 4.) (See, also, *Luhrs* v. *Supreme Lodge, Knights and Ladies of Honor*, 27 N. Y. State Repr. 88 ; *Maguire* v. *Maguire*, 59 App. Div. 143; see, also, *Story* v. *Williamsburgh M. M. B. Assn.*, 95 N. Y. 474.)

The question of *ultra vires* could only be raised by the association even if it existed as a defense. In the case at bar, under the findings of fact and the unanimous affirmance by the Appellate Division, it is very clear that even as to the defendant association the defense of *ultra vires* would not be available as it has waived the same and is estopped from pleading it. The association had repeated notice of the fact

before issuing its certificate that the insured proposed that it should be issued to the defendant Flynn with whom he lived and upon whom he depended. This appeared in the written application made to the association by the insured; again in the report of the medical examiner; once more when these papers were filed with the supreme recorder, whose duty it was to keep a record of the names of all members and their beneficiaries, and finally in the certificate as issued.

The findings disclose that the insured never married and left him surviving no wife or children, no father or mother, and the plaintiffs are his only sisters and brother; that at the time he became a member of said association, and for many years prior thereto and up to the time of his death, he lived as a boarder with the defendant Flynn, and when the certificate of membership was issued to him by said association he delivered the same to the wife of the defendant Flynn, who retained it until the death of the insured.

We are of opinion that these plaintiffs have no standing in court for the reasons already stated; and, further, that if the allegations of the complaint had been set up by the association in the action brought by Flynn they would constitute no defense, as the beneficiary named in the certificate was authorized by the act of incorporation, and the association is shown to have repeatedly waived any right it might have had to insist that the Beneficiary Fund Law, so called, did not contemplate the beneficiary named.

The association practically said to the insured, we note the name of your beneficiary and approve the same, notwithstanding our Beneficiary Fund Law fails to cover the case but our act of incorporation does. We will, therefore, issue a certificate and you can pay your dues and assessments in full confidence that in the event of death your beneficiary will receive the amount of insurance. The insured acted upon this representation and paid dues and assessments, as did the defendant Flynn; these facts clearly establish waiver and estoppel.

The judgment appealed from should be affirmed, with costs.

O'Brien, J. (dissenting). The appeal in this case presents a question concerning the right of the plaintiffs as against the defendant Flynn to a fund paid into court by a corporation engaged in issuing certificates to its members for death benefits. The Supreme Council of the Catholic Mutual Benefit Association was incorporated by chapter 496 of the Laws of 1879. By section five of this statute the object of the corporation is defined in these words: "The object of this corporation shall be to improve the moral, mental, and social condition of its members, and to educate them in integrity, sobriety, and frugality, to endeavor to make them contented with their position in life, and to aid and assist members or their families in case of death."

The corporation was authorized in the next section to create, hold, manage and disburse a beneficiary fund; and by section seven it was authorized to "set apart and provided to be paid over to the families, heirs, or representatives of deceased members, or to such person or persons as such deceased members may, while living, have directed, and the collecting, management, and disbursement of the same, *as well as the person or persons to whom and the manner and time in which the same shall be paid on the death of a member, shall be regulated and controlled by the constitution, by-laws, rules, and regulations of this corporation."* It thus appears from the law under which the corporation was organized that it was authorized to enact a constitution and by-laws, and that the person or persons to whom and the manner and time in which the death benefits shall be paid on the death of a member shall be regulated and controlled by the constitution and by-laws. It is quite probable that, under this statute, the corporation would have the power to so frame its constitution as to permit it to issue certificates for death benefits payable to strangers or to creditors or persons other than relatives of the deceased; but it will be seen hereafter that when the corporation came to enact its constitution and by-laws it limited and confined death benefits to the relatives of the deceased members. It did not consider it wise to engage in the business of

general insurance for the benefit of creditors or strangers, judging very correctly that the nearer that the operations of such associations ventured to approach the business of general insurance the greater the certainty of their being financially wrecked in the end. It was never intended that such associations were to issue certificates for the benefit of creditors or strangers. The plain purpose of the law was to enable them to set aside a benefit fund for the benefit of the families of the members in case of death. I think that the courts ought to confine such associations strictly to the purposes of their organization, and any loose construction of their contracts outside of the law of their organization ought not to be tolerated. The books are full of cases where such associations have been financially wrecked by departing from the limited purposes for which they were organized and attempting to engage in the general business of life insurance. These remarks will, I think, be found applicable to the case at bar.

On the 10th day of October, 1901, Bartholomew Savage became a member of this association and the corporation issued to him a certificate to the effect that he " is entitled to all the rights of membership in The Catholic Mutual Benefit Association and to participate in the beneficiary fund of the association to the amount of two thousand dollars, which sum shall, at his death, be paid to Barney Flynn, with whom he lives and upon whom he depends, *or such person or persons as the rules and regulations of the said association shall determine.*" Flynn was not a relative of the member. It is not found that Savage owed him any debt or was in arrears for his board ; nor is it found that Flynn paid the dues and assessments upon the certificate of membership up to the time of his death ; that is, for about a year. Savage died on the 27th of December, 1902, a little more than a year after he became a member, and upon the death of Savage Flynn claimed to be entitled to the fund. The plaintiffs are the brother and two sisters of the deceased, and they claim that the fund properly belongs to them. The association paid the fund into court, and it has no interest whatever in the litiga-

tion. The controversy is between the brother and sisters of the deceased and Flynn, and the question is, which of these claimants are entitled to the money.

As already suggested, the association, in enacting its constitution and by-laws, limited the right to share in the beneficiary fund to the family or relatives of the deceased member. The constitution of the society contains the following provision concerning the right to share in the beneficiary fund after the death of the member. As found by the trial court, it is in the following words: "Any member shall have the right and power to designate any one or more of the following class or classes of persons to receive his beneficiary fund in case of his death, to wit: His wife, his children, or any child by legal adoption, his father, mother, brothers or sisters, blood relations, or persons dependent upon him for maintenance, sustenance or support." It is quite plain from this provision that the association did not consider it wise to permit members to designate creditors or strangers as beneficiaries, but confined that power and right in the member to his family and relatives, which was the sole purpose for which the association was allowed to create the fund and distribute it. The statute and the constitution of the corporation give the right to the benefits after the death of the member, not to any person that may have been named in the certificate, but only to such persons as are entitled to it under the constitution and by-laws of the association.

It is very plain that Flynn did not come within the scope of the law which the corporation had enacted for the benefit of its members and for its own action. He was not dependent upon Savage, but it is stated in the certificate that Savage depended upon him. The deceased member had no wife or family, and he boarded with Flynn, but it is not found that the deceased owed him anything. I do not think that this court ought to give a loose construction to the contract on any theory not disclosed by the findings. As the fund has been paid into court and is under the control of the court, it should be awarded according to the terms of the certificate.

But, it seems to me, that, unless we disregard the fundamental law of the association, we cannot hold that Flynn is entitled to this fund as against the plaintiffs, who are the brother and sisters of the deceased member, and to whom the constitution of the association provides that the money shall be paid. The contract provides that the fund shall be payable to Flynn "*or such person or persons as the rules and regulations of the said association shall determine.*" These rules and regulations provide that it shall be payable, not to Flynn, but to the plaintiffs. I do not think we ought to ignore the law of the association in order to protect some real or imaginary equity that Flynn may have.

Much has been said in argument to the effect that Flynn has an equity in the fund by reason of the fact that the deceased owed him for a board bill, and that the wife of Flynn paid the dues with her husband's money. It will be noticed that no such facts have been found by the learned trial judge; the decision is in the long form and the court below was unanimous. This court cannot go into the evidence to find facts in addition to those that appear in the decision. It has no more right in the case of a unanimous decision to add facts to those found than it has to ignore facts found. Certainly, no one will claim that the evidence in the record on these questions was conclusive. It was, at best, very vague and conflicting, and the learned trial judge evidently was of the opinion that it was not sufficient to justify him in making a finding on that point or on that question. This court cannot, in such a case, go into the evidence to find a fact which the trial court failed to find. This court has held that that cannot be done, even in a case where the evidence in support of a fact not found was absolutely conclusive. (*Nat. Harrow Co.* v. *Bement & Sons,* 163 N. Y. 505.) Much less has it the right to find new facts upon evidence insufficient or conflicting.

It is contended, with great earnestness, that the association would be estopped in an action brought against it by Flynn, from alleging that it had no power to make the contract. All that may be true, but it has nothing to do with the question

in this case. The question is not whether the association itself would be estopped, but whether these plaintiffs are estopped from claiming the fund. Clearly, there is no estoppel between the plaintiffs and Flynn, and it is far from correct to say that the plaintiffs in this action are bound by principles which would apply to the association had it elected to defend the action. The association is out of the case and we have nothing to do with the law that would be applicable in case it resisted the payment. The only question in the case is to whom was this fund payable, under the constitution and by-laws of the association? I think it was payable to the plaintiffs, notwithstanding the fact that Flynn's name was inserted in the certificate. The last provision of the statute which gave the association corporate powers provided that the fund paid as death benefits shall be exempt from execution and shall not be liable to be seized, taken or appropriated by any legal or equitable process to pay any debt of the deceased member. This shows very clearly that the purpose of the statute was to authorize the association to provide a fund to be distributed to the families of deceased members, not to creditors or to strangers. Will this fund of two thousand dollars be exempt from execution when paid over to Flynn? If not, it is simply because he does not come within the scope or purpose for which the fund was provided, and if he did not, and the plaintiffs do, come within it, as it seems to me very clear they do, then we ought to declare the law upon which their rights are founded. The constitution of the association is a part of the contract, and hence the contract declares to whom the benefit fund is to be paid, and reading the certificate and the constitution and by-laws, which are a part of it, together it seems to me quite clear that the decision awarding the fund to Flynn is wrong. Discarding all irrelevant matter we will then have a certificate, policy or contract, whatever it may be called, providing that on the death of the member two thousand dollars shall be paid to "Barney Flynn or such person or persons as the rules and regulations of the said association shall determine." Now we

all agree that the rules and regulations of the association did not make the fund payable to Barney Flynn. We all agree that these rules and regulations did make it payable to the plaintiffs since they are the nearest relatives of the deceased, namely, his brother and sisters.

So that the only question we have to deal with now is whether the fund shall go to the plaintiffs to whom *it is payable* by the rules and regulations of the society, or to Flynn to whom *it is not payable* by those rules and regulations. That is the naked question. We might also eliminate from the case all that is said about *ultra vires*. The words "or such person or persons as the rules and regulations of the said association shall determine" are the last words used by the deceased in designating the beneficiary. Now if it be admitted that the designation of Flynn, if he was designated, is *ultra vires*, what matter does that make so long as the designation of the plaintiffs was *intra vires*. And so, to repeat the proposition again, this court must decide whether it will recognize the designation of Flynn, if he was designated, as concededly *ultra vires*, or recognize the last words of the designation, which concededly are *intra vires*. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

GRAY, HAIGHT and WERNER, JJ., concur with BARTLETT, J.; VANN, J., concurs with O'BRIEN, J.; CULLEN, Ch. J., absent.

Judgment affirmed.